**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

NYEISHA S. GHEE,

      Plaintiff,

                              Civil Action No.: 3:26-cv-00158-RCY

      v.

PINETREE APARTMENTS, LLC, *et al.,*

      Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT PESTNOW'S MOTION TO DISMISS**

Plaintiff Nyeisha S. Ghee, by counsel, files this Memorandum in Opposition to Defendant

PestNow's Motion to Dismiss (ECF No. 5), and  states as follows[1]:

**I.      SUMMARY**

PestNow of Central Virginia, LLC ("PestNow") owed Ms. Ghee two distinct duties of care

grounded in tort: 1) a duty to use reasonable care in performing PestNow's undertakings when

responding to the widespread termite infestation at Pinetree Apartments, based on Restatement

(Second) of Torts § 324 A ("RST 2d § 324(A)") and numerous Virginia decisions applying this

theory of liability; and 2) a duty to use reasonable care to avoid injuring others, based on such

decisions as *Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233 (2018), and the authorities it

cites. Furthermore, Virginia Code §§ 3.2-3930 and 3939(B) were enacted to protect the public and

---

[1] For purposes of this Memorandum, "Ms. Ghee" means Plaintiff Nyeisha S. Ghee, "Pinetree" means the Defendant Pinetree Apartments, LLC, "Pinetree Apartments" means the 144-unit apartment complex owned by Pinetree when the fire took place on February 20, 2024, "RST 2d" means Restatement (Second) of Torts*,* and "Primary Bedroom" means the bedroom in Ms. Ghee's apartment containing the sliding glass door through which Ms. Ghee attempted to escape with her son, Mark Ghee, during the fire.

hence can serve as the basis for a claim of negligence per se.  Finally, the Complaint's allegations create a jury question as to causation.

## II.      FACTS ASSERTED IN THE COMPLAINT

The Complaint (ECF No. 1-2) asserts that termiticide instructions required that if the exterior of a building was treated with a termiticide, the interior of the building must also be inspected. Compl. ¶ 53. However, PestNow did not inspect the inside of units unless it was already inside the unit for other pest control reasons or unless the Beachwold Defendants specifically asked for an interior inspection.  *Id.* In almost all cases, the Beachwold Defendants made no such request. *Id*.

Furthermore, each Pinetree Apartment building is constructed on a main slab with multiple adjoining concrete slabs. *Id.* ¶ 54. When PestNow applied termiticide to the exterior of a building in the Pinetree Apartment complex, the label and the standard of care required PestNow to drill holes between the adjoining slabs during application. PestNow did not do this. *Id.*

Additionally, one or more PestNow technicians who applied a termiticide at Pinetree Apartments were not Certified Applicators as required by Virginia Code § 3.2–3932. *See* the transcript of the deposition of the corporate representative of PestNow at 32:6-32:18, which states that PestNow technician Jeff Zalinski was not a Certified Applicator. *Id.* ¶ 55. PestNow's failure to follow the label instructions for the termiticide persisted as it responded to Pinetree Apartments' termite infestations, beginning at least as early as March 13, 2019, and continuing through and after the fire on February 20, 2024.  Compl. ¶¶ 55-56.

## III.     APPLICABLE LEGAL STANDARDS

To satisfy Federal Rule of Civil Procedure 8(a)(2), a complaint simply must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A Rule

2

12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A motion to dismiss for failure to state a claim may only be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitled him to relief." *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

## IV.    ARGUMENT

### A.    <u>**PestNow owed the Plaintiff two duties grounded in tort.**</u>

PestNow devotes the majority of its brief to issues that are reserved for the jury: that it did not breach a duty of care and that, even if it did, its breach did not proximately cause the harm alleged in this case. Those arguments are fully addressed below.  However, before turning to those matters, it is important to take up an argument that PestNow offers almost in passing: relying on the "source of duty" rule stated in *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81 (2019), PestNow suggests that its duty to residents of Pinetree Apartments would have been "contractual in nature." Br. at 5, 7.[2]

---

[2] It is not at all clear that PestNow is actually making this argument, as it frequently refers to its "general duty of care to others."  *See* Br. at 6 (arguing that "in performing a contractual duty PestNow owes a general duty of care"); *id*. at 7 (arguing that the complaint fails to show how PestNow "breached its general duty of care to others while carrying out its actions"); *id*. at 8 (arguing that PestNow did not "breach[] its general duty of care to others while carrying out its actions"); *id*. (arguing that the Complaint fails to explain how "PestNow's actions breached its general duty of care to others while carrying out its actions"); *id*. at 10 (arguing that the Complaint lacks an "explanation of how any of PestNow's actions breached its general duty of care to others while carrying out its actions performing termite treatment"). To be complete, however, this Opposition addresses the argument as though it was actually made.

3

This suggestion is woefully mistaken for two reasons. First, the source of duty rule would *only* be applicable if Ms. Ghee and PestNow were bound together in a contractual relationship. In such a case, there would arise the possibility (though not the certainty) that the PestNow's duty to the Plaintiff was rooted in a contractual promise rather than tort law. *See Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 558 (1998). Thus, where tort claim arises from a contractual relationship, the source-of-duty rule can assist a court in determining whether the "source" of the defendant's duty to the plaintiff existed solely in contract or also existed in tort. However, where a tort claim does *not* arise from a contractual relationship—which is the case here—there is no work for the source-of-duty rule to do. The existence of a duty is *solely* a question of ordinary tort law. It follows from this that, because the Plaintiff did not have any contractual relationship with PestNow, PestNow's duty to the Plaintiff turns entirely on whether it had a duty in tort.

On this issue, Virginia law is clear that PestNow owed Ms. Ghee two tort duties. First, Virginia law is clear that PestNow had a duty if it was "in such a position" regarding a "class of persons" that "if [it] did not use ordinary care . . . [it] would cause danger of injury" to someone within the class. *RGR, LLC v. Settle*, 288 Va. 260, 276, 279 (2014) (citations omitted); *Cf. Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233 (2018). The Complaint in this case alleges that PestNow was hired to treat Building G for termites. As an occupant of Building G, Ms. Ghee was obviously within the "class of persons" that could be harmed if PestNow failed to use "ordinary care." PestNow would have certainly known of the risk that a failure of "ordinary care" might cause and thus, by failing to use such care, breached its duty to Ms. Ghee.

Second, even if PestNow did not have a duty pursuant to the ordinary duty to act reasonably, PestNow also had a duty here because it assumed a duty towards Ms. Ghee and her sons. In *Burns v. Gagnon,* 283 Va. 657, 673 (2012), the Virginia Supreme Court adopted § 324A of the

4

Restatement (Second) of Torts. Section 324A, states that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . he has undertaken to perform a duty owed by the other to the third person . . . ."[3]  PestNow's actions in this case fit § 324A perfectly. First, PestNow "under[took] . . . to render services to" Pinetree; second, PestNow should have recognized that its services were "necessary for the protection of a third person" such as the residents on Building G; and third, PestNow's "undertak[ing]" discharged a duty "owed by [Pinetree] to the [residents of Building G]."[4] Given these facts, PestNow "is subject to liability to the [residents of Building G] for its "failure to exercise reasonable care." Put simply, because Pinetree had a duty to the residents of Building G, and PestNow agreed to do work for Pinetree in service of that duty, PestNow assumed a duty to the residents of Building G.

It is important to emphasize that, where a complaint alleges an assumption of duty, the existence of the duty is a question for the jury, not the judge. *See Burns*, 283 Va. at 672. ("But

---

[3] Other cases affirming the assumption of duty rule or § 324A include *Kellerman v. McDonough*, 278 Va. 478, 490 (2009) (quoting *Nolde Bros. v. Wray*, 221 Va. 25, 28 (1980) (referring to assumed duty principles as "ancient learning"); *Didato v. Strehler*, 262 Va. 617, 628 (2001) (applying assumption of duty principles); *Cline v. Commonwealth*, No. 151037, 2016 WL 4721393, at *2 (Va. Sup. Ct., Sept. 8, 2016) (stating "this Court has recognized the common-law principle of assumption of a duty" and applying § 324A).

[4] As landlord, Pinetree clearly had a duty to residents of Building G "to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which he has control," namely, the interior of the bedroom wall surrounding the sliding glass door in Ms. Ghee's apartment.  *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157 (1974). *See also Federico v. Lincoln Military Housing, LLC*, 2013 WL 5409910 *7 (E.D. Va. 2013) ("the plaintiffs have stated a viable claim of common law negligence with respect to the defendants' alleged failure to maintain those portions of the residences that remain allegedly outside the exclusive possession and control of the tenant-plaintiffs"); *Adams Grain & Provision Co. v. Chesapeake & O. Ry Co*, 118 Va. 500 (1916) (burst frozen pipe); *Kecoughtan Lodge No. 29, K. P. v. Stener & Kaufman*, 106 Va. 589 (1907) (burst frozen pipes).

5

when the issue is not whether the law recognizes a duty, but rather whether the defendant by his conduct assumed a duty, the existence of that duty is a question for the fact-finder."). Thus, the Court's role on an assumed duty claim is not to decide once and for all whether PestNow assumed a duty, but instead to simply decide whether the Complaint alleges facts from which a jury could infer PestNow assumed a duty. *Andrews v. Appalachian Power Co.*, 110 Va. Cir. 384 (2022) illustrates this point well. In that case, a woman was injured when she fell on a poorly lit sidewalk in Lynchburg, Virginia. The woman sued Appalachian Power for failing to properly maintain lighting in the area. *Id*. The plaintiff's theory of the case, like the theory advanced here, was that Lynchburg had hired Appalachian Power in service of its (the city's) non-delegable duty to maintain safe sidewalks and Appalachian Power had, by accepting the contract with the city, assumed the city's duty with regard to lighting. Relying on § 324A and Virginia precedent, the Court held that whether Appalachian Power had assumed a duty was "a fact-specific inquiry" that could not be resolved on a plea in bar and that the case should move into discovery. *Id*. The Plaintiff's claims here are just like those in Andrews. Pinetree had a non-delegable duty to its tenants to maintain the structural elements of its apartment complex in safe condition and hired PestNow in service of that duty. PestNow willfully assumed that duty and the Plaintiffs, just as the plaintiff in *Andrews*, seeks relief from PestNow. Thus, just as the allegations of an assumed duty presented fact questions for the jury to resolve in *Andrews*, the same result should follow here. *Cf. Burns*, 283 Va. at 672. (whether a defendant assumed a duty "is a question for the fact-finder").

Just as powerful as *Andrews* is *Boland v. Rivanna Partners L.L.C.*, 69 Va. Cir. 308 (2005). In that case, the court was faced with the following question: "Does an independent contractor hired for the season to remove snow from a parking lot have an independent duty of care to a non-contracting person who is harmed by the contractor's failure to clear the snow carefully?" Relying

6

on § 324A and Virginia precedent, the court answered "yes" and the analyzed the case similarly to *Andrews*.  Just as in *Andrews* and the instant case, a landowner had a non-delegable duty to maintain its land in a safe condition and had hired in independent contractor to discharge that duty. And just as in *Andrews* and the instant case, the court held that the contractor had "an independent duty to use reasonable care because the act of clearing the parking lot was not just for the benefit of [landlord], but also for the benefit of Plaintiff and others like her. It was clearly foreseeable that people other than [the landlord] would be affected by the [contractor's] actions."

In sum, there can be no doubt that the Complaint sufficiently alleges that PestNow had a duty.  PestNow had a duty not only because it was "in such a position" regarding a "class of persons" that "if [it] did not use ordinary care . . . [it] would cause danger of injury" to someone within the class, *RGR,* 288 Va. at 276, 279, but also because PestNow assumed Pinetree's non-delegable duty to its tenants to address any safety risks in the apartment complex that were outside tenants' exclusive control.

### B.  The Complaint Sufficiently Alleges that PestNow Breached Its Duties.

Not only does the Complaint sufficiently allege that PestNow had a duty to the Plaintiff, it also sufficiently alleges that PestNow breached that duty. The allegations establishing its breach include those alleging a violation of Virginia Code §§ 3.2-3930(A) and 3.2-3939(B), which state

> 3.2-3930 (A): A. No person shall use (except under supervised conditions of training for certification) or supervise the use of any pesticide in exchange for compensation of any kind other than the trading of personal services between producers of agricultural commodities without first obtaining certification as either a commercial applicator or registered technician in accordance with regulations adopted by the Board.

> 3.2-3939 (B): It is unlawful for any person to use or cause to be used any pesticide in a manner inconsistent with its labeling or regulations of the Board, provided that such deviation may include provisions set forth in Section 2 (ee) of the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 et seq.).

7

These statutes are public-safety statutes; a breach of which constitutes negligence per se under Virginia law. As the Virginia Supreme Court explained in *Kaltman*:

> [In *McClanahan v. California Spray-Chemical Corp.*, 194 Va. 842 (1953)] we found that the Virginia insecticide statue [a precursor of the Virginia Pesticide Control Act, *Virginia Code* §§ 3.2-3900 *et seq.*] commands a "liberal interpretation" and that "violation of the statue constitutes negligence as a matter of law precluding the need for establishing the common-law elements of negligence." … We stated that the fact the Virginia insecticide statute imposes a criminal penalty[5] is evidence of the high standard of care exacted of the manufacturer.

*Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 497 (2011): *see also*, *id.* at 498 ("We therefore are of the opinion that the Act was enacted to protect the public against the use of harmful chemicals").

The Complaint clearly explains that "termiticide instructions mandated that if the exterior of a building was treated with a termiticide, the interior of the building must be inspected as well. However, PestNow did not inspect the inside of units unless it was already inside the unit for other pest control work or if Beachwold Defendants specifically asked it to do so. In almost all instances, the Beachwold Defendants made no such request." Compl. ¶ 53. Further, the Complaint alleges that "the termiticide label" required "PestNow to drill holes between the abutting slabs of concrete" and that "PestNow did not do this." *Id.* ¶ 54. These allegations clearly establish a breach of duty under the Code of Virginia. The Code makes clear that PestNow may not "use[] any pesticide in a manner inconsistent with its labeling" and the Complaint plainly alleges that PestNow used a "pesticide in a manner inconsistent with its labeling." *Id.* at n.8. A breach of duty has thus been sufficiently alleged.

---

[5] Virginia Code Section 3.2-3947 imposes a criminal penalty on not just manufacturers but also on pest control companies such as PestNow: "Except as otherwise provided, any person who knowingly violates any provisions of this chapter or regulations adopted hereunder is guilty of a Class 1 misdemeanor and shall be subject to an additional fine of up to $500,000 if death or serious physical harm to any person is caused by the violation."

8

PestNow argues, without citation, that the negligence per se claims against it must fail because the statutes cited above are "unrelated to public safety." Br. at 8, 10. That argument is wholly foreclosed by *Kaltman*, which stated plainly that "we find that Code § 3.2–3939(B) is a public safety statute." *Kaltman* at 498. PestNow also notes at one point that the Plaintiff in this case was not within "the class of persons that [Virginia pesticide law] was intended to benefit." Br. at 7. This is also incorrect, as *Kaltman* also made clear that the law "was enacted to protect the public against the use of harmful chemicals." *Kaltman* at 498. The Plaintiff, as a member of the public, suffered grievous injury as a result of the misuse of a pesticide.  Ms. Ghee was thus plainly within the class of persons the law was intended to protect.[6]

Finally, beyond its violation of statutes constituting negligence per se, PestNow also violated its ordinary common law duty by failing to act reasonably.  The Complaint makes clear that the entire Pinetree Apartment complex was swarming with termites. Compl. ¶¶ 51, 56-57. A reasonable technician trained in the treatment of termites would undoubtedly know that in such an apartment complex, failing to inspect the interior of a structure or misapplying termiticide would create the risk of significant structural damage that could harm occupants of the structure. PestNow cannot defend its failure to inspect the interior of apartments by pointing to the Beachwold Defendants' refusal to pay for such services. If interior inspections are required by law (which they are), PestNow has no authority to "unbundle" its services, thus purposely selling an incomplete or

---

[6] In some places, PestNow tries to avoid its liability under negligence per se by arguing that a particular aspect of the termiticide label is not a "safety instruction." *See*, *e.g.*, Br. at 10 (arguing that the label's requirement of "interior inspections and drilling holds in the concrete slaps are not safety instructions"). This argument is completely meritless. Virginia Code § 3.2–3939(B) prohibits the "use[] any pesticide in a manner inconsistent with its labeling" and *Kaltman* makes clear that "§ 3.2–3939(B) is a public safety statute."  *Kaltman* at 498. Thus, every duty required by Virginia Code § 3.2–3939(B) (*i.e.*, every duty imposed by a pesticide label) is a duty concerned with "public safety."

defective product or service.  Just as a retailer cannot sell products without required safety devices, PestNow cannot sell its products and services without adhering to required safety protocols.

## C. **The Complaint Sufficiently Alleges that PestNow's Breaches Caused the Alleged Injuries.**

The Complaint alleges facts that create an issue for the jury as to causation. Looking first to actual or "but for" causation, the Complaint properly alleges such causation by alleging that PestNow failed to properly treat the termite infestation at Pinetree Apartments and that that infestation caused structural problems to the complex, which in turn caused Ms. Ghee's sliding glass door to become inoperable.

With regard to proximate cause, the Complaint also satisfies this element. A termite infestation, by its very nature, is slow-moving and constantly spreading. PestNow technicians would have reasonably known years before Ms. Ghee's injuries that half-hearted termite treatments would inevitably lead to structural damage in multiple buildings in the coming several years. Indeed, PestNow *knew* that interior inspections were necessary, but willingly sold its incomplete services to Pinetree.  A reasonable pesticide technician could hardly be surprised that years of half-hearted and incomplete termite treatments would result in significant structural damage to multiple buildings. Further, the obvious risk of structural damage is that key portions of a building—such as a door—will become inoperable, leaving occupants at risk of the harms that flow from that inoperability.  One of the harms flowing from an inoperable door is that one will be trapped within a building when they need to escape, which is exactly what occurred here.

PestNow does not seriously contest proximate cause in this case.  It only argues in certain places that its improper termite treatments had "nothing to do with" the Plaintiff's apartment and thus cannot be held liable. Br. at 7, 9, 10, 11. These arguments are flawed in two respects. First, they ignore that the Complaint plainly alleges that, *with regard to Building G* (where Ms. Ghee

10

resided), PestNow technicians "failed to follow the termiticide label instructions by not inspecting the buildings' interiors when treating their exteriors, and by failing to drill holes in the abutting concrete slabs . . . ." Compl. ¶ 58. An allegation that PestNow breached its duty of care with regard to Building G plainly establishes a proximate connection between that breach and harm to the occupants within Building G (which includes the Plaintiff). With regard to other failures, however, proximate cause is established because the nature of termite infestations is such that half-hearted and incomplete treatments with regard to one building can easily give rise to similar problems in nearby buildings. This is exactly what occurred at the Pinetree Apartment complex and PestNow played a crucial role in the slowly unfolding disaster. *See* Compl. ¶ 50 (stating that, according to Plaintiff's termite expert Robert Kunst, "Eastern Subterranean Light Termites readily move from one building to another, travelling an average radius of approximately half a mile from their nest. This range easily covers the buildings at Pinetree Apartment and goes well beyond their bounds.").

Finally, it is important to keep in mind that "the issue of proximate cause is a question of fact for resolution by a jury" and is only resolvable by a court "when reasonable minds cannot differ about the result." *Bon Secours-DePaul Med. Ctr., Inc. v. Rogakos-Russell*, 304 Va. 1, 18, (2025) (citations omitted). Further, Virginia law is clear that there may be multiple proximate causes for a single event. *Panousos v. Allen*, 245 Va. 60, 65 (1993) ("There may . . . be more than one proximate cause of an event."). Thus, the Plaintiff's obligation here is not to convince the Court that PestNow's breaches were the sole and proximate cause of the harms alleged in this case, but only to allege sufficient facts for a *reasonable jury* to find that PestNow was *at least one cause* of the harms alleged here. By alleging PestNow's half-hearted and incomplete termite treatments—both to Building G itself and throughout all of Pinetree Apartments—the Plaintiff has clearly met her obligations at this stage of the case.

11

## CONCLUSION

For these reasons, this Court should deny Defendant PestNow's motion to dismiss.


Respectfully submitted,

NYEISHA S. GHEE


By:   /s/ Mark J. Krudys
                    Counsel

Charles H. Cuthbert, Jr. (VSB # 14519)
Richard M. Cuthbert (VSB # 82025)
Cuthbert Law Offices,
A Professional Corporation
220 North Sycamore Street
Petersburg, Virginia 23803-3228
(804) 733-3100
Fax: (804) 732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

Mark J. Krudys (VSB#30718)
Daniel Zemel (VSB#95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA, 23219
(804) 774-7950
Fax: (804) 381-4458
mkrudys@krudys.com
dzemel@krudys.com

12

## Certificate of Service

I hereby certify that on this 20th day of March 2026, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

_/s/ Mark J. Krudys_
Mark J. Krudys (VSB# 30718)
THE KRUDYS LAW FIRM, PLC
Truist Place, 919 East Main Street, Suite 2020
Richmond, VA, 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com
_Counsel for Plaintiff_

13