IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE,

      Plaintiff,

v.                                  Civil Action No.:  3:26-cv-158-RCY

PINETREE APARTMENTS, LLC, et al.,

      Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL
12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pinetree Apartments, LLC; Beachwold Holdings, LLC; Beachwold Residential, LLC;

South Oxford Management, LLC; Nadra Yohannes; Ricky McConnell; and Alvin Peebles

("Defendants"),[1] by counsel, submit this Reply in Support of their Partial 12(b)(6) Motion.

## I.      INTRODUCTION

Plaintiff cannot escape the fact that the alleged defect (inoperable sliding door) was

discoverable through ordinary inspection, that Plaintiff discovered it months before the fire, and

Plaintiff only claims that a ground-level maintenance employee knew about the conditions in Unit

G-8. Plaintiff's attempt to transform this simple landlord-tenant dispute into a fraudulent

concealment case through inflammatory rhetoric and unreasonable inferences should be rejected.

The Opposition confirms that Plaintiff's claims rest on a series of implausible assumptions.

Plaintiff asks this Court to infer that painting over presumed termite damage in May 2022

concealed an inoperable sliding door for twenty-one months, despite the fact that Plaintiff slept in

that bedroom every night. Plaintiff asks this Court to infer that upper management committed fraud

---

[1] Clearfield/Pinetree Apartments, LLC, and Beachwold Partners, LP, are dismissed. (ECF No. 14).

based solely on general knowledge of limited water issues reported in other apartments that were repaired, without any allegation that these individuals knew about the specific conditions in Unit G-8, or even that they knew Plaintiff's claimed theory was possible. And Plaintiff asks this Court to impose liability on affiliated entities and individual employees without identifying any common law duty these parties owed to Plaintiff. The Court should reject these implausible assumptions and grant Defendants' Motion to Dismiss.

## II.    **LEGAL ARGUMENT**[2]

**A.    Count I and II: Plaintiff's Fraud and Concealment Claims Fail Because They Are Not Reasonably Supported by Pled Factual Contentions.**

### i.    The Alleged Defect Was Not and Could Not Be Concealed.

Plaintiff's Opposition fails to address the most glaring flaw in her concealment theory: the operability of a Sliding Door cannot be concealed. *See Kuczmanski v. Gill*, 225 Va. 367, 370 (1983). This fact alone is sufficient and should result in dismissal of all fraud and concealment claims against all defendants. Plaintiff attempts to deflect focus to the Sliding Door's header, but the header in isolation is <u>not</u> the defect. This is an egress claim. Plaintiff's alleged harm comes from her inability to open the Sliding Door during the fire. *See* Compl. ¶ 105. That is it.

Plaintiff argues that, in July 2023, when she discovered that the Sliding Door could not open, she did not know "the supporting wooden framing inside the wall would only become out of square with time."[3] (ECF No. 15, at 12 n.4). Plaintiff has not cited any authority for her argument

---

[2] Plaintiff incorporated all arguments raised in her Motion for Remand regarding the joinder issues. See (ECF Nos. 11, 12). Defendants' opposition is not due under Rule 7(F)(1) until April 3, 2026. Defendants will address the joinder issues then, and thus incorporate those arguments here.

[3] Plaintiff was also not entitled to ignore notice of a potential problem. *See Chavis v. Gibbs*, 198 Va. 379, 383 (1956) ("Caveat emptor is one of the best settled maxims of the law… He has no right to shut his eyes or his ears to the inlet of information[.]" (citations omitted)); *cf. E-Poch Props., LLC v. TRW Auto. U.S., LLC*, 286 Fed. App'x 276, 281 (6th Cir. 2008) (noting that the issue is whether a person "would be put on notice of a possible problem. Thus, a party cannot

I-3047164.1

that she needed to understand the entire causal chain when she concedes she was aware of the alleged defect's <u>potential hazard</u>. Because it is settled law, "[t]he relevant question under Virginia law is **not whether the defect itself … was obvious, but whether the hazard … was open and obvious**." *Freeman v. Case Corp.,* 118 F.3d 1011, 1014-15 (4th Cir. 1997); *see also John Aragona Enters., Inc. v. Miller*, 213 Va. 298, 304 (1972) ("The canal and its steep bank **constituted a danger** which was open and obvious to anyone old enough **to appreciate such a hazard**."); *High v. Coleman*, 215 Va. 7, 8 (1974) ("**The danger** was open and obvious, and he was bound to have **appreciated the existing hazard**[.]") (emphasis added).

When framed applying Virginia law to whether Plaintiff perceived the ***hazard and risk*** of an inoperable Sliding Door, the answer is clearly yes. Plaintiff admits that the very first time she tested the Sliding Door in July 2023, she knew the door would not open. *See* Compl. ¶ 34. The Sliding Door had allegedly already reached its maximum harm in July 2023: it would not open. *See id.* That is the exact problem that Plaintiff alleges caused harm. *See* Compl. ¶ 105. No further deterioration threatened to cause a different (or more) harm, nor was further knowledge necessary to perceive the risk and hazard of an inoperable Sliding Door.

Not only were Defendants' alleged actions incapable of masking the Sliding Door's operability, but the thing presumed in Plaintiff's Complaint, the ongoing water intrusion and termite issues, would have become obvious despite the paint quickly thereafter. However, Plaintiff never reported any termites or leaking issues, and she claims the original May 2022 paint was still in place 21 months later (rather than bubbling up from termites or washing off from water intrusion). Fraud cannot lie where the Plaintiff is chargeable with conducting a reasonable

---

disregard a fact … and then allege the fact was unknown or undiscoverable." (cleaned up) (citations omitted)).

3

I-3047164.1

inspection to see if the Sliding Door functioned – and in fact discovered the alleged hazard (inoperable Sliding Door) all by herself.  *See Kuczmanski*, 225 Va. at 370. No more ink need be spilled for the Court to dismiss all the fraud and concealment claims.

ii.      It Is Not Reasonable to Infer Termite Were Inhabiting the Header Above Unit G-8 When Unit G-8 Was Repaired.

There is no contemporaneous evidence from May 2022, when Unit G-8 was repaired, that termites were actively attacking the header above the Sliding Door (which is the only time that matters). If the alleged termite damage above the Sliding Door was not active, then the alleged concealment efforts have no legal effect. Plaintiff only has two data points to claim that termite activity existed in May 2022: that sometime between 2017 and 2019 (at least three years before Plaintiff's tenancy), a prior tenant – with no expertise in termites – claims to have identified termites, *see* Compl. ¶ 26, and in 2024, three months after the fire and fire suppression efforts, and after the Sliding Door itself had been destroyed by the fire, Plaintiff's expert identified termite damage inside the wall, *see* Compl. ¶ 3. Critically, in between those two data points, Building G was treated by PestNow for termites (2019), *see* Compl. ¶ 58, and then re-checked the following year (2020), with no sign of termites, *see* Compl. ¶ 59. Plaintiff also lived in the apartment from 2022 to 2024, and never reported any termite sightings or that the header above the Sliding Door showed termite damage. Thus, the plausible inference is that any damage seen by her expert in 2024 was old, non-active termite damage that did not cause ongoing deterioration during Plaintiff's tenancy, or at the very least it cannot be accurately dated to a specific time.

iii.     Plaintiff Fails to Meet Any Critical Element of the Fraud Claim.

Plaintiff is also incorrect that she meets "without challenge" the other elements of fraud. *See* Pl.'s Opp. (ECF No. 15, at 6). Plaintiff meets none of the elements other than damages. There have been hundreds of pages of briefing, and this briefing is at least the *fourth round* of substantive

I-3047164.1

briefing. *See* No. 3:25-cv-17 (ECF Nos. 5-6, 26-27, 49). Plaintiff's plethora of adjustments to the Complaint over the last year have pertained to the concealment issue, but Plaintiff continues to be on notice of Defendants' other essentially unchanged arguments.

Plaintiff restates her argument that it was "material" that the apartment was "safe." *See* Pl.'s Opp. (ECF No. 15, at 13 n.5). Silent representations that an apartment is "safe" are too vague to be actionable. *See, e.g.*, (ECF No. 10, at 15); *see also* No. 3:25-cv-17 (ECF No. 6, at 7), (ECF No. 27, at 16-17). Further, it requires a present fact, not a promise that something will or will not happen in the future. *Patrick v. Summers*, 235 Va. 452 (1988) (citations omitted) ("As a general rule, 'fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated upon unfulfilled promises or statements as to future events.'"). Otherwise, every breach of contract would become a fraud case and the rule of *caveat emptor* – the default rule under Virginia law – would never apply because every tenant and purchaser would argue that they received the silent misrepresentation that the dwelling was "safe." Plaintiff's failure to ask Defendants about the Sliding Door, failure to inspect the Sliding Door upon moving in, failure to use the Sliding Door throughout her tenancy, and failure to check on whether the Sliding Door had been repaired after July 2023 all cut against any argument that she thought its operability was material. *See Guy v. Tidewater Inv. Props.*, 41 Va. Cir. 218, 220-21 (Norfolk 1996).

Plaintiff also cannot state a claim for reasonable reliance when she could have discovered the Compression Issue by merely attempting to open the Sliding Door. *See* No. 3:25-cv-17 (ECF No. 17). Tenants cannot rely on misstatements when they can easily find the truth for themselves. *See Kuczmanski*, 225 Va. at 370. It is no answer that Plaintiff did not understand the structural causation theory (the Compression Issue), because she was fully aware of the possible harm. *See supra.* Plaintiff's fraud claim fails on all counts.

5

     iv.    <u>Plaintiff Fails to State a Fraud Claim Against Maintenance Employees.</u>

Because Plaintiff has fraudulently joined McConnell and Peebles to this lawsuit, her failure to state a fraud or concealment claim against them was discussed in the Notice of Removal, (ECF No. 1), and will again be the subject of Defendants' upcoming opposition to Plaintiff's Motion for Remand. It has also been repeatedly briefed. *See* No. 3:25-cv-17 (ECF Nos. 6, 27, 32, 49, 55). Plaintiff's Opposition also does not substantively discuss this point, so Defendants incorporate all other briefing.

     v.    <u>Plaintiff Fails to State a Fraud Claim Against Anyone Else (Including Yohannes and the Affiliated Entities).</u>

The only defendant alleged to have any specific knowledge whatsoever about the conditions in Unit G-8 is the maintenance person who painted Unit G-8 in May 2022. Like with any fraud claim, Plaintiff must show as to each Defendant (1) knowledge of the material fact; (2) knowledge of the concealment; and (3) intent for the concealment. *See Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003); *see also Dobson v. City of Annapolis*, No. 25-cv-03128, 2025 LX 198926, at \*4 (D. Md. Oct. 8, 2025) (noting that collective pleading is insufficient). Plaintiff fails to cite facts that these Defendants knew about the alleged concealment in Unit G-8. Plaintiff's attempt to plug these gaping logical holes with layers of unreasonable inferences is ineffective.

First, Plaintiff asserts that "the Defendants knew that siding needed to be removed from all of the apartments[.]" (ECF No. 15, at 10) (emphasis added); *see also id.* at 14. This claim is ridiculous! Pinetree has 144 units. Pinetree was not the original owner but purchased the complex in 2011, about 16 years after construction. It is unknown who installed the flashing or if there were prior repairs. Further, even if the subset of units experiencing water intrusion had incorrect flashing, this does not create any inference about the condition of units that <u>were not</u> expeiencing

6

water intrusion (and Plaintiff never claimed Unit G-8 was experiencing water intrusion issues). The complete lack of substantially similar symptoms prevents the other units from being substantially similar. *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 325 (1977) (requiring that issues occur "under substantially the same circumstances"). ***The flashing on Unit G-8 could have been installed correctly or even replaced by the prior owner.*** Plaintiff also demonstrates confirmation bias, stating that "every time private contractors pulled off siding and looked, they found some or all of the foregoing" – ignoring the fact the siding was only pulled off for active water intrusion. Yohannes denied that proactive inspection of units without issues would be reasonable. *See* Yohannes Depo. 178:1-180:6 (Ex. I) (ECF No. 1-13, at 5) ("Sixteen times out of 144 units would not require removing the drywall from 144 units."). Apartment complexes reasonably make repairs when there are symptoms of issues. The absence of symptoms reasonably supports the absence of issues. Plaintiff cannot blanketly accuse Defendants of knowing something that is not reasonable.

It is yet another logical leap to claim that the water intrusion issues were causing the Compression Issue, or that Defendants knew about the Compression Issue. There is no evidence that Defendants knew the Compression Issue was possible.[4] Nor does the Compression Issue follow logically from a compromised wooden header.[5] *See* Pl.'s Opp. (ECF No. 15, at 15).

---

[4] Defendants pointed out that "Plaintiff fails to identify any apartments that experienced water intrusion issues **and** reported a correlated difficulty with opening the sliding door[.]" (ECF No. 10, at 12) (emphasis in original). Plaintiff's Opposition still fails to connect opening issues, and not merely leaking issues, to improperly installed flashing. *See Sawyers v. UPS*, No. 18-CV-1037, 2019 LX 154571 (M.D.N.C. Sept. 11, 2019) (observing that "failing to respond to an argument constitutes an abandonment of a claim" (citations omitted)).

[5] Plaintiff claims her experts have "seen the same type of damage" before. Pl.'s Opp. (ECF No. 15, at 15). This is an overstatement. Dano Holland, an engineer only opined on the Sliding Door itself. Notably, Holland's opinions were after the Sliding Door was removed and "destroyed in the fire." Holland. Aff. ¶ 15. Robert Kunst, the termite expert, was only "aware of instances where termite damage has interfered with the operation of sliding glass doors," without reference to the

Plaintiff's allegations cut against the Compression Issue. It is far more likely that the Sliding Door would experience water leaks through the loosened gaps. Unlike the Compression Issue, Plaintiff's allegations support this because tenants complained about water intruding through gaps, and Plaintiff even included a photograph of a tenant's attempt to seal the gaps. *See* Compl. ¶ 44(c). If there were gaps allowed flowing water, then the headers did not compress the Sliding Door, because the alleged weight of the wood would have sealed gaps and stopped the water flow. Without notice, Plaintiff cannot plausibly allege that anyone knew about the Compression Issue.

Plaintiff's theory on "intent" is equally weak. Intention requires a "knowing and a deliberate decision" with "intent to mislead[.]" *Norris v. Mitchell*, 255 Va. 235, 241 (1998); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984). These Defendants did not know Plaintiff or form a specific intent to defraud her. *See Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003) (requiring knowledge before intent). To replace this, Plaintiff champions the theory of top-to-bottom pressure to save money. Plaintiff points to only two things that allegedly were rejected: (1) sliding doors were repaired on a "piecemeal basis"; and (2) not every building was treated for termites in 2019. (ECF No. 15, at 13). Plaintiff's first argument presumes the logical fallacy that every unit needed repairs. *See supra.* Pinetree repaired units when needed, and Plaintiff only cites apartments *where repairs were made*. It is thus nonsensical to argue that Pinetree avoided repairs based on the fact that Pinetree made repairs. Regarding the termite treatment, Plaintiff claims that PestNow recommended all townhouses be treated, Compl. ¶ 99, but PestNow later specified which buildings had active termites in 2019, all of which were treated (including Building G), *see* **Exhibit A**. It is not reasonable to fault Defendants for not treating buildings where treatment was not

---

Compression Issue or details about how termites had interfered, or any attempt to connect the vague anecdote to the subject Sliding Door. *See* Kunst Aff. ¶ 5.

needed because there were no termites. Plaintiff has not identified any legitimate safety-related repairs that were knowingly rejected for cost reasons.

Even if the Court gives credence to the theory that repairs were slow-rolled (which is not supported by the evidence pertaining to repaired apartments), making business decisions on the timing of repairs that will disrupt tenants is not *fraudulent*. Paragraph 130 of the Complaint shows that Defendants engaged in repairs:

- Dan DeStefano told Gideon Friedman that they would spend money to repair the termite issues. *See* Compl. ¶¶ 98 & n.11; 130.

- Rob Glass received a copy of an invoice repairing Unit O-10 and negotiated a contract for repair. *See* Compl. ¶¶ 97 & 12; 130.

- Tracy Arruda and Yohannes both had apartments repaired. *See* Compl. ¶ 130.

None of the communications concern apartments that were denied repairs. More importantly, there is not a single document, quote, or circumstance alleged that gives rise to a reasonable inference that ground-level maintenance had been intentionally directed by Yohannes or the Affiliated Entities to actively conceal damage let alone the specific type of damage Plaintiff claims was concealed. The number of apartments that were repaired instead supports the reasonable inference that Yohannes and the Affiliated Entities sought out third-party contractors and paid for repairs when necessary. Stripped of the hyperbole and rhetoric, there is simply no intent to show fraud.

      vi.      <u>Plaintiff Cannot State a Claim for Constructive Fraud Based on Concealment as a Matter of Law but Must Show Intent to Defraud.</u>

As a last ditch effort, Plaintiff references "constructive fraud," claiming that she does not need to show intent. But *constructive fraud does not exist for silent misrepresentations*, only affirmative ones. "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (citing *Norris v. Mitchell*, 495 S.E.2d

9

809, 812 (Va. 1998)); *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003) ("Proof of fraud by nondisclosure 'requires evidence of a knowing and deliberate decision not to disclose a material fact.'" (quoting *Lambert v. Downtown Garage*, 262 Va. 707, 714) (2001)). This is "a matter of common sense and logic," because concealment (which "always involves deliberate nondisclosure") and constructive fraud (which capture "negligent … but otherwise innocent … omissions") are claims that "cannot overlap." *N. Va. Eye Inst., P.C. v. Cynosure, LLC*, No. 21-cv-00008, 2021 LX 75804, at \*13 (W.D. Va. Apr. 20, 2021). The Complaint does not allege an affirmative misrepresentation – indeed, nothing was said to Plaintiff about the Sliding Door. *See* Compl. ¶ 33. Again, Plaintiff must show intent. There was none.

**B.     Count III: Plaintiff' Cannot State Negligence Claim Against the Other Defendants Because There Is No Duty.**

i.      <u>The Affiliated Entities Did Not Owe a Common-Law Tort Duty to the Plaintiff.</u>

The existence of a legal duty is a pure question of law. *See Parker v. Carilion Clinic*, 296 Va. 319, 348 (2018). Plaintiff has not cited any Virginia law imposing a tort duty on asset managers like Beachwold Residential, LLC, and Beachwold Holdings, LLC, and she scantly cited precedent that *might, but does not,* impose a tort duty on property managers like South Oxford Management, LLC.[6] *See Milburn v. J.C. Penney Props.*, No. CL-2006-7068, 2007 Va. Cir. LEXIS 42, at \*3-4 (Fairfax 2007) (noting that the Virginia Supreme Court *has not determined* the scope of a property manager's duties to invitees). To the extent it exists, Virginia law only imposes the duty of care that Plaintiff seeks here – for proactive inspection to repair existing defects, rather than reactive repairs of reported defects – on the property owner. *See, e.g.*, Va. Code Ann. § 55.1-1200 (defining landlord is the "owner, lessor, or sublessor of the dwelling unit"); *Taylor v. Va. Constr. Corp.*, 209

---

[6] Even there, Plaintiff only relies on tort duties that apply to the property owner/landlord.

Va. 76, 79 (1968) (observing that when "the owner of a building demises separate parts thereof to different tenants," the common area "remains in control of the landlord"); *Turner v. Carneal*, 156 Va. 889, 893 (1931) (observing that the argument the defendants should have been aware of the alleged condition might be "entitled to more consideration" if against the landlord, but when against the agent, it was dismissed).

Plaintiff continues to insist that the Affiliated Entities "owned" Pinetree, but only Pinetree Apartments, LLC, owned the apartments[7] – each of the Affiliated Entities had defined contractual duties and acted pursuant to dedicated agreements. Further, Plaintiff willfully mischaracterizes the asset manager's involvement in maintenance. The asset manager was not involved in day-to-day maintenance operations that involved only South Oxford's employees (e.g., the make-ready work in Unit G-8 in May 2022). Plaintiff refers to Paragraph 130 of the Complaint, but this only supports that the Affiliated Entities' alleged control pertained to third-party contractor agreements for larger-scale projects, not day-to-day maintenance – and notably, only for repairs that had been affirmatively identified to them. Nothing in Plaintiff's Complaint supports assumption of daily maintenance or proactive regularly scheduled inspections.

ii.    The Affiliated Entities Did Not Assume a Duty to Plaintiff.

Plaintiff's reference to Restatement (Second) of Torts § 324A (1965) is similarly problematic and unpersuasive. To trigger the Restatement, Plaintiff must show an assumption "to render services to another which he should recognize as necessary for the protection of a third person or things[.]" § 324A. There are two potential actions which Plaintiff argues demonstrates assumption: by contracting for termite repairs in 2019; and by approving third-party contractors to

---

[7] Property law requires more than control for ownership, but must also valid conveyance by deed, compliance requirements for recordation, delivery, etc. *See, e.g.*, *Wintergreen Homestead, LLC v. Ray M. Pennington & Bettie's Wintergreen, LLC*, 104 Va. Cir. 362 (Nelson County 2020).

11

make repairs to sliding glass doors that had water intrusion issues. Neither of these show an assumption of a duty to protect Plaintiff from the Compression Issue.

Regarding the termites, the scope of the Affiliated Entities' involvement was knowledge of PestNow's 2019 work – years before Plaintiff's residence in Unit G-8 – without any discussion about the possibility for future termite infestation or agreement to prevent same. Nothing about negotiating (or even paying for, which is disputed) a one-time termite treatment imposes a legal duty to prevent future termite damage forever. It is also not even alleged that the Affiliated Entities selected PestNow or had any involvement with PestNow after 2019. The 2019 work treated Building G, which did not have any termite issues the following year, also breaking any causal chain with Plaintiff's tenancy. *See* Compl. ¶ 59. The Complaint does not support any inference that the Affiliated Entities assumed a duty to protect Plaintiff from alleged termite damage in 2024.

Regarding the third-party contractor repairs to specific water-damaged units, the asset manager only assisted in negotiating contracts for third-party repairs of specific apartments with known issues. The Affiliated Entities never discussed having the entire complex inspected. This case is thus distinguishable from *Cline v. Commonwealth*, in which the Court found that an assumption of duty *might* stand *if* the plaintiff could prove that an inspection conducted for the purpose of remediation uncovered the existence of a specific harmful tree, whose danger was understood, and then chose not to have it removed. *See* No. 151037, 2016 Va. Unpub. LX 20, at *4-5 (Sept. 8, 2016). In contrast, the Affiliated Entities never contemplated an inspection of Unit G-8. The Affiliated Entities had no knowledge about any alleged conditions in Unit G-8. The Affiliated Entities never made a judgment about whether Unit G-8 constituted hazard – and also never knew about the novel Compression Issue in the first place. *See supra*. No assumption of duty can be implied without this knowledge.

12

Virginia law requires that assumption of duties must be expressly shown. In *A.H. v. Church of God in Christ, Inc.*, the Supreme Court of Virginia emphasized that "there must be a clear expression of intent by a defendant to take on a legal duty to protect a plaintiff who is justifiably relying upon that clearly expressed intent." 297 Va. 604, 624 (2019). Even cases like *Burns v. Gagon*, which Plaintiff cites, only open the possibility for an implied assumption when there is some communication of intent. *See* 283 Va. 657, 672 (2012) (noting the allegation that "Burns assumed a duty to investigate Diaz' report … because Burns told Diaz that he would 'alert security,' 'look into it,' and 'take care of it'"); *Kellerman v. McDonough*, 278 Va. 478, 489 (2009) (noting that the defendant "agreed and said 'don't worry, I promise we'll take good care of her'"); *Didato v. Strehler*, 262 Va. 617 (2021) (noting duty for physicians to test report results when plaintiffs asked). Plaintiff cites to no cases that infer an assumption of duty to the plaintiff from services rendered to someone else. *See Hope v. Commonwealth*, 92 Va. Cir. 6, 21 n.15 (Staunton 2015). The Affiliated Entities never expressed an intent to assume the alleged ongoing inspection duties of a property owner – and Plaintiff was not "justifiabl[e in] relying" upon such intent because she did not even know the Affiliated Entities existed.

Neither is the simple existence of a contract sufficient to show assumption of tort duties. In *Cawlo v. Rose Hill Reserve Homeowners Ass'n*, the plaintiff tried to argue under the Restatement that the defendant assumed a duty of care by accepting a contract regarding the property. 106 Va. Cir. 235, 243 (Fairfax 2020). The Court rejected this argument because the defendant did not have "an express assumption of duty" and never even interacted with the plaintiffs. *Id.* at 243. Similarly, the Affiliated Entities' contractual relationship with Pinetree Apartments, LLC, cannot be the source of a tort duty to the Plaintiff. *See supra.* There are no facts in the Complaint that support an assumption of duty by the Affiliated Entities toward the Plaintiff.

13

iii.    The Doctrine of *Respondeat Superior* Does Not Apply.

Plaintiff takes the unprecedented tack that the Affiliated Entities are responsible for Pinetree Apartments, LLC, and/or South Oxford Management, LLC's actions under the doctrine of *respondeat superior*. This doctrine governs the vicarious liability of an employer for the tortious acts of its employees. *See Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 844 (2019) (requiring the showing of a master/servant or employer/employee relationship and a wrongdoing "within the scope of employment"). Plaintiff does not cite any authority for the proposition that *respondeat superior* applies between separate corporate entities. Rather, the only doctrine that applies to vicarious liability between separate corporate entities is veil piercing. Defendants thus incorporate all arguments about why Plaintiff has failed to state a claim for piercing the corporate veil. *See* No. 3:25-cv-17 (ECF No. 55, at 21-26).

iv.    Yohannes Was an Individual Employee of South Oxford Management Who Can Only Be Held Personally Liable for Malfeasance.

a.  *Yohannes Can Only Be Held Liable for Malfeasance not Nonfeasance.*[8]

Contrary to Plaintiff's assertion, *Harris* is not the only Virginia case to have ever distinguished between non-feasance and malfeasance for employees.[9] *See, e.g.*, *Dixon v. S. Boston Corp.*, 69 Va. Cir. 313, 314 (Richmond 2005) ("Under Virginia law, an employee of the owner or operator of the premises … may be held liable only for affirmative acts of negligence, not merely because, in the status of an employee of the owner or operator, he or she is guilty of an omission."

---

[8] Plaintiff does not meaningfully discuss the nonfeasance/malfeasance distinction as pertaining to McConnell and Peebles, but the same case law and arguments are relevant as to them.

[9] Not only does *Hope v. Commonwealth* not follow the majority of Virginia case law, but its distinction is unpersuasive here because the *Hope* employee had specific knowledge about the hazardous drop-off and failed to complete scheduled repairs. 92 Va. Cir. 6 (Staunton 2015). Yohannes did not know about the conditions in Unit G-8.

14

(*quoting Beaudoin v. Sites*, 886 F. Supp. 1300, 1303 (E.D. Va. 1995)). No cause of action can accrue to a third party based only on duties an employee only owes the employer:

> "Though a third person suffers a loss as a result of an agent failing to perform his duties to his principal, if that breach of duty to the principal is unaccompanied by any act or omission of the agent whereby a duty owing by him to the third party is breached, no cause of action accrues in favor of the latter against the agent." … [Defendant's] duty to be at his appointed place and perform his appointed tasks is a duty he owed to his employer, VDOT. It is not a duty owed to [Plaintiff].

*Slone v. Hickock*, 25 Va. Cir. 422, 424 (Botetourt County 1991) (quoting *Knight v. AH Coast Line*, 73 F.2d 76, 77 (5th Cir. 1934)) (emphasis added). The Fourth Circuit has routinely applied this distinction to employees. *See, e.g.*, *Orr v. Delhaize Am.*, No. 09-cv-527, 2010 U.S. Dist. LX 161711 (E.D.Va. Feb. 19, 2010); *Holloway v. Petsmart, Inc.*, No. 10-cv-132, LX 157300 (July 15, 2010); *Walker v. Kroger Ltd. P'ship I*, No. 19-cv761, LX 78433 (May 2, 2020); *Krugylakv. Home Depot U.S.A., Inc.*, No. 22-cv-0024, LX 53933 (Mar. 28, 2023); *cf. Metz v. McCarthy*, No. 24-1820, 2026 LX 5594, at \*12 (4th Cir. Feb. 25, 2026).

The distinction in *Tingler v. Graystone Homes, Inc.*, "has a centuries-old provenance[.]" *McDiarmid Assocs. v. Yevdokimov*, 2022 Va. Unpub. LEXIS 11, at \*8 (June 23, 2022) (quoting *Tinger*, 298 Va. 63 (2019)). Virginia law makes it clear that the agent (e.g., employee) must owe a duty *separate from* the duty that he/she owes the principle (e.g., employer) and that is *personally owed* to the plaintiff to make the agent liable to the third party directly: "The servant's mere omission of duty towards his master will not give the person a right of action, but omitting to perform a duty which he and his master owe to a third person may give a right of action." *Funch, Edye & Co. v. Gulf Smokeless Coal Co.*, 148 Va. 167, 175 (1927) (emphasis added). Far from being unique, the principle in *Harris* is found throughout Virginia law.

The application of *Tingler* and the malfeasance/nonfeasance distinction to employees is logical. "The question of liability for negligence cannot arise at all until it is established that the

15

man who has been negligent owed some duty . . . Where no relationship exists, it is axiomatic that there is no duty." *Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233, 243 (2018) (citations omitted). Yohannes has no personal relationship with Plaintiff, and outside her employment for South Oxford, they are strangers under the law. No duty to Plaintiff could possibly be asserted absent Yohannes's employment with South Oxford. Thus, the only nexus between Yohannes and Plaintiff arises out of her contractual employment for South Oxford. Without her employment contract (creating duties to South Oxford, not Plaintiff), Yohannes is just a Virginia resident that Plaintiff has targeted to defeat diversity.

### b.   *Yohannes Was Not an Individual "Landlord."*

Plaintiff's argument that Yohannes was an individual landlord rather than an agent of South Oxford should be dismissed outright, for all the reasons stated above. *See* (ECF No. 15, at 19). Yohannes was not the landlord. Yohannes has never had any ownership interest in the Pinetree apartments. Yohannes did not personally enter into the lease with Plaintiff. Yohannes never even knew Plaintiff's name until after the subject fire.

Plaintiff's left-field argument relies solely on *Gumenick v. United States*, 213 Va. 510 (1973), which contains a rather generic observation that the "appellants and their agents had full authority and the duty to make reasonable inspections of the premises and to make needed repairs." *Gumenick v. United States*, 213 Va. 510, 516 (1973). Notably absent from this discussion is the critical issue: **to whom would the *agents* – not the landlord – have owed that duty?** Nowhere is there Virginia authority that an agent of the landlord – or the agent of a property management company – owes the same tort duties to tenants as the landlord. The *Milburn* court observed the critical difference between "the duty of *individual employees* of the owner or operator of the premises" and the "corporate manager in charge of the overall safety of the premises." 2007 Va.

16

Cir. LEXIS 42, at *4 (discussing *Beaudoin*, 886 F. Supp. at 1303). Absent her employment, Yohannes and Plaintiff are strangers, and there is no common law duty. Opening the door to individual personal liability requires more than an employment relationship.

## C.      Count IV: The Virginia Consumer Protection Act.

Defendants' argument about the VCPA is simple and straightforward: an alleged silent misrepresentation that Unit G-8 was "safe" does not trigger the misrepresentation exception under the VCPA because if the Court credits Plaintiff's argument, the VCPA's designation that the VRLTA otherwise controls the landlord-tenant relationship would have no meaning; the *caveat emptor* rule would be eviscerated; and every tenant could make a claim under the VCPA for any defect in their apartment that they claimed was safety related.[10] To be clear, Defendants do not dispute that the text of the VCPA may cover fraudulent misrepresentation, just that a silent, non-verbal generalized representation that an apartment is "safe" is nonactionable because the requirement to provide a safe and habitable apartment is controlled by the VRLTA. *See* Va. Code § 59.1-199. And, as stated above, it requires a present fact, not a promise that something will or will not happen in the future. *See Patrick, supra.* To hold otherwise would mean every landlord-tenant action was a fraud claim.

Further, *Lambert v. Downtown Garage, Inc.* dictates that under the VCPA, any silent misrepresentations must still include evidence of a knowing and deliberate decision not to disclose a material fact. 262 Va. at 714. As discussed above, Plaintiff cannot state a claim that Defendants

---

[10] Plaintiff relies on *Stith v. Liberty Pointe*, 110 Va. Cir. 141 (Petersburg 2022), but *Stith* relies on a provision *from the VRLTA* for the possible existence of a misstatement. *Id.* at 145 (citing Va. Code § 55.1-1220). The VRLTA has its own remedies and provisions, and if the legislature intended violations of the VRLTA to also be violations of the VCPA, then very explicit carveout that actions subject to the VRLTA do not give rise to remedies under the VCPA would not have been added. *See* Va. Code § 59.1-199.  *Stith* is the only Virginia case to hold this, contains no discussion of its logical fallacy, and appears to be wrong.

17

intended to deceive her. Unlike in *Guy v. Tidewater Investment. Properties.*, 41 Va. Cir. 218 (Norfolk 1996), where the defendant had notice of specific apartments units that contained lead paint, with a corresponding notice from the public health department about its health effects, Plaintiff has not adequately pled even that the Compression Issue interfered with other sliding glass doors at Pinetree. *See supra.*; *see also Aboushaban v. Am. Signature, Inc.*, 2021 LX 42807, at *10 (E.D. Va. Feb. 1, 2021) ("Proof of an actual infestation would be required to show that Defendants had knowledge of it, and Plaintiffs have provided no such proof."). Moreover, any generalized opinions that an apartment is "safe" are non-actionable opinion statements, not fraudulent statements. *See Yuzefovsky v. SJW, Ltd. P,shp.*, 49 Va. Cir. 183, 185 (Richmond 1999). The Court should dismiss the VCPA claim.

## D.    Count V: Nuisance.

Plaintiff seeks to tack on a nuisance claim to her negligence claim, but Plaintiff cannot bring both – the nuisance claim is subsumed in and replaced by the negligence claim. *See Robinson v. Johnson*, 48 Va. Cir. 66, 72 (Richmond 1999) ("Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will apply."). All of the arguments raised regarding the lack of duty are thus applicable here. Because Plaintiff can only potentially allege a duty against Pinetree Apartments, LLC, and possibly, but not here, against South Oxford Management, LLC, it is only necessary to respond to Plaintiff's arguments as they pertain to these two entities – although even these entities' alleged liability would only extend as far as the previously stated negligence claims. *See supra.*

The alleged defect here was a natural condition caused by the progression of water and termite damage, and *Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012), is on point. Plaintiff attempts to transform the actual condition by claiming that the "Defendants improperly installed

18

flashing," but the Complaint does not allege Defendants installed the flashing, and Pinetree did not purchase the property until 16 years after the original construction. *See* Compl. ¶ 43. There are also no factual allegations supporting that G-8 had the alleged flashing issue. Plaintiff's expert does not mention flashing. *See* Holland Aff. ¶ 17. Further, Plaintiff's Sliding Door was destroyed in the fire, and the apartment was repaired without inspection of the flashing. *See* (ECF No. 1, at 9 n.5) (discussing Plaintiffs' counsel's failure to request preservation during post-fire inspections).

Plaintiff's reference to *Fancher v. Fagella* is also misplaced. 274 Va. 549 (2007). *Fancher* involved a neighbor requesting an injunction to have the alleged nuisance permanently removed from a neighbor's property; it did not involve landlord-tenant disputes, which are more appropriately dealt with under *Oliver v. Cashin*, 192 Va. 540 (1951). To the extent Plaintiff claims that the nuisance was in the common area under Pinetree's exclusive control, then this is just a negligence action based on a landlord's duty to maintain common areas, not a nuisance claim. *Kesler v. Allen*, 233 Va. 130, 133 (1987) (noting that the landlord has "a duty to use ordinary care to maintain in a reasonably safe condition any part of the leased premises that was reserved for the common use of all tenants"); *see also Walisser v. Harris*, 81 Va. Cir. 14, 17 (Nelson 2010) (dismissing nuisance claim as "simply another way for the plaintiff to allege negligence").

### E.    Punitive Damages.

Plaintiff bases her request for punitive damages on a single maintenance man with a paintbrush. Painting a header above a sliding glass door to repair chipping paint is not the type of "egregious conduct" that justifies punitive damages in Virginia. *See A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 637 (2019). If Virginia has disallowed punitive damages for drunk driving with prior DUI convictions or fleeing the scene of an accident – conduct that is socially reprehensible and illegal – how can maintenance repairs to an apartment be an extraordinary case? *See Hack v. Nester*, 241 Va. 499 (1990); *Dunn v. Dawson*, 34 Va. Cir. 179 (Fairfax 1994). There

19

is also no evidence that anyone at Pinetree, Yohannes, or the Affiliated Entities even knew the header was painted, let alone that it allegedly had external showing termite damage, meaning no one ever ratified the conduct. *See., e.g.*, *A.H.*, 297 Va. at 637 (punitive damages cannot be awarded against a master or principal for the wrongful act in which he did not participate, authorize, or ratify). There also should not be any intentional tort upon which to base such damages: not only has Plaintiff failed to pled fraud and/or concealment, but nothing supports willful or wanton conduct even on the negligence claim. *See supra*.

It is not an answer that the punitive damages should simply go to a jury. "It is for the court to say whether the evidence tends to establish a proper case for their allowance, and for the jury to determine in such case whether they should be allowed." *Evans v. Schuster*, 178 Va. 61, 66 (1941). No matter how many ways the allegations are spun, this is not a punitive damages case. It never has been and never will be more than a simple landlord-tenant negligence claim, with no possibility of punitive damages.

### III.   CONCLUSION

For the foregoing, reasons stated in opening briefing (ECF Nos. 9-10), and any reasons stated at any hearing, the Defendants respectfully request this Court PARTIALLY DISMISS Plaintiff's Complaint with prejudice, and order further relief as the Court deems appropriate.

**PINETREE APARTMENTS, LLC,
BEACHWOLD HOLDINGS, LLC,
BEACHWOLD RESIDENTIAL, LLC, SOUTH
OXFORD MANAGEMENT, LLC, NADRA
YOHANNES, RICKY MCCONNELL, and
ALVIN PEEBLES**

By: */s/ Joseph P. Moriarty*

Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)

20

WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC,
Beachwold Holdings, LLC, Beachwold
Residential, LLC, South Oxford Management,
LLC, Nadra Yohannes, Ricky McConnell, and
Alvin Peebles*

I-3047164.1

## CERTIFICATION

I hereby certify that on this 26th day of March, 2026, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone: 804-733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone: 804-774-7950
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

Alexander Francuzenko (VSB No. 36510)
Philip C. Krone (VSB No. 87723)
Dunn Craig Francuzenko
3251 Blenheim Blvd., Suite 404
Fairfax, VA 22030
Telephone: 703-856-7480
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for PestNow of Central Va, LLC*

*/s/ Joseph P. Moriarty*
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Pinetree Apartments, LLC, Beachwold Holdings, LLC, Beachwold Residential, LLC, South Oxford Management, LLC, Nadra Yohannes, Ricky McConnell, and Alvin Peebles*

22

I-3047164.1