**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

NYEISHA S. GHEE,

     Plaintiff,

v.

                                      Civil Action No. 3:26-cv-158-RCY

PINETREE APARTMENTS, LLC, *et al.*,

     Defendants.

**PLAINTIFF'S REPLY TO THE BEACHWOLD DEFENDANTS'
OPPOSITION TO MOTION TO REMAND**

**I.  INTRODUCTION**

Two weeks ago, the Fourth Circuit issued its decision in *Skidmore v. Schinke*, No. 25-1436, 2026 U.S. App. LEXIS 9129 (4th Cir. Mar. 30, 2026), emphatically reaffirming that fraudulent joinder only exists if a claim against a non-diverse defendant is legally *impossible*—not merely unlikely or weak. *Id.* at *9-10.  This is an extraordinarily high bar.  As the Fourth Circuit explained, a claim "might not be strong. It might even be the legal equivalent of a half-court shot. But as anybody who's watched enough basketball knows, half-court shots sometimes go in. Improbable? Yes. Impossible? No." *Id.* at *10-11. And a district court "shouldn't wrestle with thorny state-law questions, nor should it otherwise 'delv[e] too far into the merits.'" *Id.* at *7-8.

Defendants' thirty-page brief advances a single thesis: that Plaintiff's claims against PestNow of Central Virginia, LLC ("PestNow") and the Individual Beachwold Employees (Defendants Nadra Yohannes, Ricky McConnell, and Alvin Peebles) are nonfeasance claims that cannot support liability as a matter of Virginia law. They are wrong. But even more dispositive at this stage, *Skidmore* makes clear that the governing standard is not whether the Plaintiff is likely

to prevail on the merits, but instead whether her claims against the non-diverse defendants have even a "glimmer of hope." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). Under that standard, Defendants have not carried their burden. Removal jurisdiction is strictly construed, doubts are resolved in favor of remand, and all disputed factual and legal questions must be resolved in Plaintiff's favor. The Motion to Remand should be granted.

## II.   LEGAL STANDARD

The burden of establishing fraudulent joinder[1] is on the removing party and is a heavy one. A defendant is fraudulently joined only when "there is no possibility that the plaintiff would be able to establish a cause of action" against it in state court. *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis added). Even a "glimmer of hope" of recovery defeats fraudulent joinder. *Hartley*, 187 F.3d at 426. In making this determination, the Court must "resolve all questions of fact and law in favor of the plaintiff." *Hartley*, 187 F.3d at 424. Removal statutes are strictly construed against removal, and "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

As discussed above, the Fourth Circuit recently and emphatically reaffirmed these principles in *Skidmore v. Schinke*. Fraudulent joinder arguments "ask[] the district court to do something extraordinary—maintain jurisdiction over a case that should, on its face, proceed in state court." No. 25-1436, 2026 U.S. App. LEXIS 9129, at *7 (4th Cir. Mar. 30, 2026).[2] An "extraordinary" request demands an extremely powerful showing. *Skidmore* leaves no doubt about what that showing requires:

---

[1]The word "fraudulent" in this context is a term of art; it is not an intimation of wrongdoing by Plaintiff or by her counsel. *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990).

[2] The Defendants do not contest that PestNow and the Individual Defendants are residents of Virginia, thus destroying perfect diversity jurisdiction.

• Even if state law supporting a claim is "far from airtight," and "even if the defendants have the better of this argument," a "district court err[s] in finding fraudulent joinder" unless it is "*impossible*" the plaintiff could succeed. *Id.* at *9-10.

• Even weak and implausible claims defeat fraudulent joinder. As the Fourth Circuit put it, a claim "might not be strong. It might even be the legal equivalent of a half-court shot. But as anybody who's watched enough basketball knows, half-court shots sometimes go in. Improbable? Yes. Impossible? No." *Id.* at *10-11.

• "[A] district court shouldn't wrestle with thorny state-law questions, nor should it otherwise 'delv[e] too far into the merits.'" *Id.* at *7-8 (quoting *Hartley*, 187 F.3d at 425). "[A]ll doubts about the propriety of removal should be resolved in favor of remanding the case to state court." *Id.* at *8.

• If the court "cannot predict with certainty how a state court . . . would resolve the legal issues' implicated by the case, it should leave those issues for a state court to decide." *Id.* at *8 (quoting *Hartley*, 187 F.3d at 425-26).

• The fraudulent joinder standard is "'even more favorable to the plaintiff than the standard for ruling on a motion to dismiss' under Federal Rule of Civil Procedure 12(b)(6)." *Hartley*, 187 F.3d at 424. Because *Twombly* and *Iqbal* have since made 12(b)(6) more demanding, "that's even more true today." *Skidmore*, 2026 U.S. App. LEXIS 9129, at *7 n.5.

Defendants selectively quote *Skidmore* for the proposition that a federal court may "predict with certainty" how a state court would decide the unsettled questions of state law at issue here. Opp. at 4-5. But that is precisely the concession Defendants cannot afford to make: if the legal questions in this case require any "prediction" whatsoever, they are not "clearly settled" against Plaintiff, and fraudulent joinder has not been established. *Skidmore* confirms that the fraudulent joinder doctrine is a narrow escape valve for plainly obvious cases—not a vehicle for adjudicating contested state-law questions in federal court.

### III.   ARGUMENT

**A.      Plaintiff Has at Least a Glimmer of Hope Against PestNow.**

3

The Beachwold Defendants, in contrast to PestNow itself,[3] offer several arguments why PestNow cannot be held liable to the Plaintiff.  As explained below, these arguments all fail.

### 1.      The Source of Duty Rule Is Inapplicable Here.

The bulk of the Beachwold Defendants' argument regarding PestNow is based on their belief that the source of duty rule (the "SOD Rule") applies here.  The SOD Rule is important to the Defendants' argument in two respects: (1) it supports their argument that PestNow did not have a duty to the Plaintiff, and (2) it supports their argument that, whatever duty PestNow might have had, the duty cannot be breached by nonfeasance (which they contend is all PestNow engaged in here). Yet, as explained below, the SOD Rule does not apply to this case.  This, in turn, conclusively defeats the Beachwold Defendants' duty and nonfeasance arguments.

The Beachwold Defendants argue that "[t]he SOD Rule distinguishes between whether the original duty owed arose from tort or contract law."  Opp. at 6. This is partially correct, but incomplete in a crucial way. A more accurate statement of the rule would be as follows: "[t]he SOD Rule distinguishes between whether the original duty owed *to the plaintiff* arose from tort or contract law."  It is pointless to consider the "source" of the defendant's duty where no contract is present because the source of duty can only come from one place and one place only: tort law. Suppose, for example, that A contracts with B for the delivery of some packages.  While B is driving across town to complete the delivery, B runs a stoplight and injures C.   If C sues B, the source of duty rule will have no application even though B was acting pursuant to a contract.  B's

---

[3] There is a noticeable disjointedness in the Beachwold Defendants focusing their argument upon the appropriateness of PestNow's inclusion in the matter, especially since PestNow seems rather ambivalent about where this matter is tried and has invested almost no resources in keeping the lawsuits in federal court. In response to Plaintiff's Motion to Remand, PestNow has filed a two-sentence filing. ECF No. 21. It is not even clear by that filing what PestNow seeks to do. *Id.* (stating *"*[t]o the extent necessary, PestNow adopts and incorporates by reference the Opposition filed by the co-defendants.").

4

promise to A to deliver packages does not displace his duty to C to drive safely.  In contrast, if the packages are damaged in the accident and A sues B for the damage, the SOD Rule would be relevant to whether B committed a tort, breached a contract, or both.  Thus, where a plaintiff and defendant are not joined by contract, there can be no confusion about the potential source of the defendant's duty and the SOD rule is consequently irrelevant.

Once it is clear that the SOD Rule does not apply here, two points come into clearer focus. First, the existence of PestNow's duty in tort to the Plaintiff becomes a question of ordinary tort law. As explained in her prior briefs and further explained below, PestNow owed a duty to the Plaintiff under (1) *RGR v. Settle*, 288 Va. 260 (2014) and related cases and (2) Restatement (Second) of Torts § 324A, which Virginia adopted in *Burns v. Gagnon*, 283 Va. 657 (2012). Second, the distinction between misfeasance and nonfeasance, which is rooted in the SOD Rule, becomes irrelevant.  *Tingler v. Graystone Homes*, *Inc*., the Virginia Supreme Court's most recent and comprehensive case on the SOD Rule, makes clear that nonfeasance is *only* relevant where one lacks an underlying duty in tort. 298 Va. 63, 84 (2019). As the Court put it, "[t]hough subject to various exceptions, the traditional view recognizes that there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do *in the absence of a duty to act apart from the promise made*." *Id.* (emphasis added and cleaned up).  Thus, under *Tingler*, where there *is* a duty to act, liability can flow from nonfeasance.

To argue otherwise would radically alter the ordinary rules of tort law, which routinely hold defendants liable for what might be described as "nonfeasance." A driver who fails to brake cannot escape liability by labeling his failure "nonfeasance" because the duty to drive safely obviously includes braking when appropriate. So too with lawyers who miss filing deadlines and employers who fail to terminate dangerous employees: where a duty exists, liability flows from

5

the failure to discharge it.  *See, e.g., Temple v. Moses*, 175 Va. 320, 338 (1940); *Williams v. Joynes*, 278 Va. 57, 63 (2009); *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 401 (1988).

In sum, the Beachwold Defendants have staked their PestNow arguments on a flawed understanding of the SOD Rule.  The SOD Rule does not apply to the claims against PestNow, and the proper analysis is simply whether PestNow owed a duty of care and failed to discharge it.

### 2.      PestNow Owed the Plaintiff a Duty Under Ordinary Tort Law.

Virginia law is clear that PestNow had a duty if it was "in such a position" regarding a "class of persons" that "if [it] did not use ordinary care . . . [it] would cause danger of injury" to someone within the class. *RGR, LLC v. Settle*, 288 Va. 260, 276, 279 (2014) (citations omitted); *Cf. Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233 (2018). The Complaint in this case alleges that PestNow was hired to treat Building G for termites. As an occupant of Building G, Ms. Ghee was obviously within the "class of persons" that could be harmed if PestNow failed to use "ordinary care." PestNow would have certainly known of the risk that a failure of "ordinary care" might cause and thus, by failing to use such care, breached its duty to Ms. Ghee.

The Beachwold Defendants attack this argument by falling back on their SOD argument: "*RGR* did not overturn Virginia's longstanding law on the malfeasance-nonfeasance distinction" and the "Plaintiff's allegations against PestNow are controlled under *Tingler*."  Opp. at 8.  But as conclusively shown already, the SOD Rule explained in *Tingler* has no application to this case. Thus, the  "malfeasance-nonfeasance distinction" that is relevant in SOD situations is completely irrelevant here.  Just like any defendant under a tortious duty to act, PestNow's failure to act is sufficient to hold it liable.

Moreover, even if nonfeasance were somehow a barrier to relief, the Plaintiff alleges *misfeasance*. Plaintiff alleges that PestNow affirmatively applied termiticide across the Pinetree

complex but did so negligently by not applying it according to the label instructions, failing to drill treatment holes into wall voids, and failing to conduct interior inspections of compromised units. Compl. ¶¶ 56-64. Applying a treatment carelessly is an affirmative act.  Thus, even if PestNow could somehow escape liability for nonfeasance, its actions here do not fall into that category.

Not only does a duty exist here under *RGR* and similar cases, but it also exists under *Kaltman v. All American Pest Control, Inc.*, 281 Va. 483 (2011).  In *Kaltman*, the Virginia Supreme Court held that pest control contractors owe common-law duties to persons in the treated area. *Id.* at 490-93. The Defendants argue that *Kaltman* favors them, Opp. at 6-7, but they are mistaken.  First and most centrally, their arguments rest on their misunderstanding of the SOD Rule, which plainly does not apply in this case. Thus, any focus on misfeasance v. nonfeasance is completely irrelevant. Second, even if *Kaltman* could somehow be read to prohibit relief for nonfeasance (which it cannot), the Plaintiff's Complaint alleges misfeasance, not nonfeasance.  As noted just above, the Complaint alleges that PestNow *affirmatively provided* pest control services that failed to meet the standard of care.  Compl. ¶¶ 56-64.  Third, *Kaltman* itself makes clear that liability turned on the defendant's use of a dangerous pesticide, which in turn created a foreseeable risk of injury to people in the treated premises. 281 Va. at 491. Privity of contract was not the touchstone; the nature of the work was. Plaintiff and her family (some of whom most certainly did *not* enter into a contract with the pest control company) were precisely the people at foreseeable risk from PestNow's defective termite treatment of their building.

Finally, even *if* the Court found itself unsure of the exact parameters of *RGR*, *Kaltman* and the SOD Rule, that alone is reason to remand this case.  *Skidmore v. Schinke* makes clear that "all doubts about the propriety of removal should be resolved in favor of remanding the case to state

court."  2026 U.S. App. LEXIS 9129, at *8.  Indeed, even if Defendants "have the better of this argument," remand remains appropriate.  *Id.* at *9-10.

### 3.    Section 324A Creates a Genuine Question of Assumed Duty.

Even if PestNow did not have a duty under *RGR* and related cases, it also had a duty under Restatement (Second) of Torts § 324A, which makes clear that a party who "performs a duty owed by another" to a third party may assume a duty to the third party. PestNow argues that § 324A does not apply because PestNow never expressed intent to assume the landlord's obligations. Opp. at 8-9. But *Burns v. Gagnon* squarely holds that assumption under § 324A can be implied from conduct, not merely from express communication. 283 Va. 657, 672 (2012). PestNow conducted a multi-year, complex-wide termite control program. That ongoing undertaking plausibly constituted the performance of a duty that Pinetree—as landowner—owed to its tenants to maintain the premises free of pest damage. Whether PestNow's conduct crossed the threshold for assumed duty under § 324A(b) is a question of Virginia law that this Court should not resolve against Plaintiff at the fraudulent joinder stage.

The cases Defendants cite for an "express intent" requirement—*A.H. v. Church of God in Christ, Inc.*, 297 Va. 604 (2019), *Kellermann v. McDonough*, 278 Va. 478 (2009), and *Didato v. Strehler*, 262 Va. 617 (2001)—involved undertakings in which a defendant made a specific communication about safety but nowhere in those cases did the Virginia Supreme Court declare that the communication must be explicit. The *only* situation in which the Court has signaled a requirement of express intent to assume a duty concerns the protection of persons from third-party violence. *See Terry v. Irish Fleet, Inc.*, 296 Va. 129 (2018).  Indeed, in that case, the Court was careful to make clear that "[a]s a general proposition, a duty that does not otherwise exist may be

8

*impliedly assumed from the defendant's conduct*." *Id*. at 138.[4] PestNow's multi-year role in maintaining the complex's pest-free condition can easily imply its assumption of duty to the residents of Pinetree. At minimum, the argument is colorable.

The Beachwold Defendants also attempt to distinguish *Andrews v. Appalachian Power Co.,* 110 Va. Cir. 384 (Lynchburg 2022) and *Boland v. Rivanna Partners*, 69 Va. Cir. 308 (Charlottesville 2005), both of which held that where a property owner has hired a contractor to perform a task, the contractor could be liable to a third party injured by the contractor's negligence. Regarding *Andrews*, the Defendants weakly argue that the case "does not control" here because it acknowledges "split legal authority" on the issue.  Opp. at 10.  ***This is a fatal concession under Skidmore v. Schinke***. If there is, in fact, "split legal authority" on whether contractors can be liable to third parties, then this Court certainly cannot "predict with certainty" how a state court might resolve the issue. 2026 U.S. App. LEXIS 9129, at *8.  This Court may not "wrestle with thorny state-law questions" and must instead resolve "all doubts about the propriety of removal . . . in favor of remanding the case to state court."  *Id*. at *7-8.

Regarding *Boland*, the Defendants appear to argue that, because the landowner there did not attempt to delegate a duty to the contractor, the contractor could not have assumed a duty. Opp. at 10.  This is incorrect. The court in *Boland* clearly held that, even though the landowner did not delegate its duty of "proper maintenance" to the contractor (because it was a "non-delegable duty"), the contractor could *still* assume a duty of care under § 324A. *Boland*, 69 Va. Cir. at *4.  Summing up the rule, the court stated: "[t]he independent contractor who acts to provide

---

[4] The Beachwold Defendants argue that *Terry* only acknowledged implied duties in the context of "motorists . . . signaling others to proceed."  Opp at 9.  This argument is completely untenable given the Court's explicit statement that implied assumption of duty was "a general proposition," not one confined to the motor vehicle context. *Terry*, 296 Va. at 138.

9

a service which clearly impacts the safety of other persons, retains an independent duty of care to any person who could be affected by a careless performance of that service." *Id.*

Finally, it is crucial for the Court to remember that the existence of duty under an assumption of duty theory is a question of fact for the jury, not a question of law for the judge. *See Burns*, 283 Va. at 672 ("But when the issue is not whether the law recognizes a duty, but rather whether the defendant by his conduct assumed a duty, the existence of that duty is a question for the fact-finder."). Thus, as long as the Plaintiff has alleged facts permitting a jury to find an assumption of duty—even if those facts are weak—the Court must remand this case to state court. *Skidmore,* 2026 U.S. App. LEXIS 9129, at *10-11.

### 4. Speculativeness Is a Merits Defense, Not a Fraudulent Joinder Defense.

Defendants argue that no termites were found in Unit G-8 and that the causal connection between PestNow's treatments and the structural damage is speculative. Opp. at 11. This argument is flawed for two reasons. First, the Plaintiff's claims are not speculative. She has pleaded that Building G was treated, that PestNow's treatment was inadequate, and that the resulting termite infestation caused the Compression Issue in Unit G-8. These allegations are sufficient for a fact-finder to find in favor of the Plaintiff. Second, even if these allegations could be described as "speculative," that would not be sufficient to show fraudulent joinder. Under *Skidmore*, speculative claims—even claims that are the "legal equivalent of a half-court shot"—may nonetheless succeed and are thus insufficient to show fraudulent joinder. *Id.*

### B. Plaintiff Has at Least a Glimmer of Hope Against the Individual Employees.

### 1. Virginia Law Does Not Recognize a Nonfeasance Rule for Employees

The Beachwold Defendants try mightily to defend the claim that, under Virginia law, a defendant's status as an "employee" is sufficient to trigger a nonfeasance rule that would not

otherwise apply.  Thus, the Defendants contend that, if a driver fails to look both ways before entering traffic, the driver's liability will depend on whether he was an employee or not.  This is an astonishing contention and one that is, not surprisingly, supported by only a single state trial court opinion from 1993, the opinion in *Harris v. Morrison*, 32 Va. Cir. 298 (Richmond 1993). *Harris* has *never* been followed by another Virginia court and has been squarely rejected by *Hope v. Commonwealth*, 92 Va. Cir. 6 (Staunton 2015).  The conflict between *Harris* and *Hope* is, on its own, sufficient to justify a remand in this case.  This Court may not "wrestle with thorny state-law questions" and must instead resolve "all doubts about the propriety of removal . . . in favor of remanding the case to state court."  *Skidmore*, 2026 U.S. App. LEXIS 9129, at *7-8.

Even if the Court were inclined, contra *Skidmore*, to "delv[e] too far into the merits," it would find the Defendants' arguments wanting.  First, the vast majority of legal authority cited by the Defendants consists of federal district court opinions.  Federal district court opinions are *not* authoritative on the content of Virginia law.  Virginia appellate opinions—and *only* Virginia appellate opinions—bind this Court on the content of Virginia law.  Of course, district court decisions can be useful evidence of Virginia law but, on this particular issue, the decisions have veered off path.  The district court opinions all trace back to a single, originating opinion: *Beaudoin v. Sites*, 886 F. Supp. 1300 (E.D. Va. 1995).  In *Beaudoin*, U.S. District Judge Payne relied chiefly on *Harris v. Morrison* to hold that employees could not be liable for nonfeasance.[5]  *Id*. at 1302-03.  Yet, as explained in *Hope v. Commonwealth*, *Harris* is squarely wrong because it badly

---

[5] To be sure, Judge Payne also cited *Miller v. Quarles,* 242 Va. 343 (1991) and *Turner v. Carneal,* 156 Va. 889 (1931), but it appears that Judge Payne pulled these citations directly from *Harris v. Morrison*, which itself relied on the cases. Neither case, however, has *anything* to say about whether employees can be held liable for nonfeasance.  *See Hope v. Commonwealth*, 92 Va. Cir. 6 (Staunton 2015) (refusing to follow *Harris* because of its misreading of Virginia Supreme Court precedent).

11

misread Virginia Supreme Court precedent. 92 Va. Cir. 6 (Staunton 2015) (refusing to follow *Harris* because its reading of a Virginia Supreme Court case "is not at all what the Supreme Court held in that case"). Thus, because the federal authority cited by the Defendants is all based on *Beaudoin v. Sites*,[6] and because *Beaudoin* is based on the now-discredited *Harris v. Morrison*, it follows that the federal authority is not justified by the content Virginia law. Indeed, another district court has taken exactly this view. *Boone v. Duffy Box & Recycling, Inc.*, No. 3:17-CV-400, 2017 WL 6100329, at *3 (W.D.N.C. Dec. 6, 2017) (stating that "[m]ultiple federal district courts have endorsed [the view stated in *Beaudoin*] but they all trace the distinction between misfeasance and nonfeasance to one short Virginia Circuit Court opinion from 1993, *Harris v. Morrison, Inc.*" and refusing to follow *Harris* because "other Virginia courts have disagreed with [its] misfeasance-nonfeasance dichotomy").

Like their arguments based on federal authority, the Defendants' arguments based on state authority also badly miss the mark. The Defendants cite a total six cases as purported evidence that *Harris v. Morrison* correctly states Virginia law (though they conspicuously fail to cite, much less engage with, *Hope v. Commonwealth*, 92 Va. Cir. 6 (Staunton 2015) which exposes *Harris'* flaws). As explained below, these cases do *not* establish that, where an employee owes a duty of care, that duty may only be breached by misfeasance.

- *Dixon v. S. Boston Corp.*, 69 Va. Cir. 313 (Richmond 2005) did *not* involve a claim against an individual employee. As such, that case provides no authority establishing that employees, as compared to non-employees, may escape liability for nonfeasance.
- *Sloan v. Hickock*, 25 Va. Cir. 422 (Botetourt County 1991) specifically recognizes that, if an employee owes a duty to a third party, that duty may be breached by an "act *or*

---

[6] To be clear, not every federal case cites to *Beaudoin* itself. Cases decided soon after *Beaudoin* cited directly to *Beaudoin*, but later cases sometimes cited to precedent that itself cited to *Beaudoin*. Whatever the specific citation patterns might be, it is clear that *Beaudoin* was the original impetus for the other district court opinions adopting an employee nonfeasance rule.

*omission*." The Defendants specifically quote this passage, Opp. at 12, but utterly fail to recognize that it contradicts their argument.

- *Schoonover's Adm'r v. Russell*, 8 Va. Cir. 320 (Richmond 1987) held that the defendant employees did not have a duty to the decedent but, just as in *Sloan*, the Court made clear that its holding applied regardless of whether an "act or omission" had been alleged.

- *Pusey v. Riner*, 26 Va. Cir. 321 (Fairfax County 1992) held that two employees owed duties "towards the Fairfax County School Board under their employment contracts," not towards a third party who sued the employees. It most certainly does *not* hold that employees who have a duty to the third party in tort cannot be sued for nonfeasance.

- *Funch, Edye and Co. v. Gulf Smokeless Coal Co.,* 148 Va. 167 (1927) is a curious case for the Defendants to cite because the case—in words that the Defendants also quote— declares that an employee's "omitting to perform a duty to a third party which he and his master owe to a third party may give a right of action." Opp. at 13. Thus, *Funch* is clear that, if an employee has a duty to a third person, it may be breached by "omi[ssion]."

- *Morris v. Dame's Ex'r*, 161 Va. 545 (1933), like other cases that the Defendants cite, turns on the existence of a duty, not on whether the duty may be breached by nonfeasance. Indeed, the court makes clear that if a duty is owed, an "omission" that results in injury is actionable. *Id*. at 574.

In sum, despite claiming that there are "too many cases to quantify," Opp. at 13, the Defendants' legal authority is severely wanting. The fact of the matter is that the best reading of Virginia law establishes that, where a defendant has a duty of care, that duty may be breached by nonfeasance *regardless* of the defendant's employment status. Even if this Court were not fully persuaded, however, the Plaintiff has easily provided sufficient authority to show that a state court *might* rule in favor of the Plaintiff on this issue. For that reason, this Court should resolve "all doubts about the propriety of removal . . . in favor of remanding the case to state court." *Skidmore,* 2026 U.S. App. LEXIS 9129, at \*7-8.

### 2.     Even if Misfeasance Were Required to State a Claim, the Plaintiff has Alleged Misfeasance

As explained above, the Beachwold Defendants' nonfeasance argument is severely wanting. Yet, even if the Plaintiff's claims against the individual defendants required a showing of misfeasance, she has easily met that bar as well.

13

### a. Painting Over Visible Structural Damage Is Misfeasance.

The nonfeasance/misfeasance distinction turns on whether the defendant's conduct—as opposed to a mere failure to act—"increased the risk" of harm to the plaintiff. *Tingler*, 298 Va. at 84 (quoting Prosser and Keeton). Plaintiff alleges that McConnell and/or Peebles visited Unit G-8 in May 2022, observed visible termite damage on the wooden door frame, and applied paint over the damaged wood—"paint[ing] over the visible termite damage, but left untouched the termite-damaged deteriorated wood framing." Compl. ¶ 29. This was not a failure to repair. It was an affirmative act that (a) concealed the visible evidence of structural deterioration from Plaintiff as an incoming tenant; (b) misled management and future maintenance personnel about the true condition of the framing; and (c) may have worsened conditions by sealing moisture into the damaged wood. An employee who physically covers a defect in a way that obscures its severity from those who rely on the premises has arguably increased—not merely failed to decrease—the risk of harm.

Defendants' case law does not address this situation. In *Metz v. McCarthy*, the Fourth Circuit held that a skylight contractor who inspected a defective skylight, acknowledged it needed repair, and left without fixing it was guilty only of nonfeasance. 167 F.4th 722, 727 (4th Cir. 2026). Critically, the contractor in *Metz* did not take any action directed at the defect itself—he observed and departed. Here, the Maintenance Employees did not simply observe and leave. They affirmatively applied paint to the area of visible damage. Similarly, in *Beaudoin v. Sites*, 886 F. Supp. 1300 (E.D. Va. 1995), and *Saunders v. Boddie-Noell Enters.*, 2008 U.S. Dist. LEXIS 48715 (W.D. Va. 2008), the employees took no affirmative action directed at the hazardous condition. The act of painting over structural damage—and the greasing of a compromised sliding door track to simulate smooth operation—are affirmative acts that go beyond mere failure to repair.

14

Defendants also rely on *Alier v. Gorbel, Inc.*, 115 Va. Cir. 295 (Roanoke 2025), for the proposition that an inspector who certifies equipment as safe despite known defects is guilty of nonfeasance. Opp. at 16. But *Alier* turned on the absence of any affirmative act that increased the risk. Where an employee goes a step further and physically conceals a defect—applying paint to disguise rotted wood, or greasing a track to simulate proper function—a factfinder could conclude the employee's conduct crossed the line into misfeasance. That conclusion is not "impossible" under Virginia law, which is all that is required to defeat fraudulent joinder.

b. **Yohannes's Affirmative Budget Directives Constitute Misfeasance.**

Plaintiff alleges that Yohannes, as Regional Manager, received reports of termite damage, water infiltration, and failing sliding glass doors across multiple Pinetree buildings, and affirmatively directed that management "limit costly repairs." Compl. ¶ 98 n.13, 130. Defendants characterize this as mere failure to act. Opp. at 19-20. But issuing a directive that affirmatively caps maintenance expenditures—ensuring that structural defects will go unaddressed—is an exercise of authority, not a passive omission.

In *RGR v. Settle*, the Supreme Court of Virginia recognized that an actor who takes an affirmative step that increases the risk of injury to others may be liable under general negligence principles, even absent a preexisting duty to act. 288 Va. 260, 276 (2014). Yohannes's directive affirmatively increased the risk that known structural defects would remain unaddressed and would worsen—a direction that, unlike mere inaction, can plausibly be characterized as misfeasance.

Defendants cite *Logan v. Boddie-Noell Enters.*, 834 F. Supp. 2d 484 (W.D. Va. 2011), where a restaurant manager who failed to clean up a watery substance was found to have committed nonfeasance. But in *Logan*, the manager's only alleged conduct was passively observing the hazard. Yohannes did not merely observe unrepaired conditions—she affirmatively

15

directed that costly repairs be deferred. The difference between passive inaction and an affirmative exercise of supervisory authority is a legally significant distinction that presents, at minimum, a colorable claim.

### 3.   Gumenick Supports a Colorable Duty Running to Plaintiff.

*Gumenick v. United States* holds that the owner's "agents had full authority and the duty to make reasonable inspections of the premises and to make needed repairs." 213 Va. 510, 516 (1973). Defendants respond that *Gumenick* does not address to whom the agent's duty ran. Opp. at 20. Perhaps—but that question has not been clearly answered against Plaintiff's position under Virginia law, and other Virginia authorities confirm the duty runs to occupants. *See Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157 (1974) (landlord has duty "to exercise ordinary care and diligence to maintain in a reasonably safe condition" areas within its control); *Federico v. Lincoln Military Housing, LLC*, 2013 WL 5409910, at *7 (E.D. Va. 2013) (recognizing viable negligence claim for failure to maintain portions of residences outside tenant's exclusive possession and control). Tenants are the obvious beneficiaries of an agent's duty to inspect and repair. The argument that *Gumenick's* duty language extends to an agent's obligations to the tenants whose safety depends on proper maintenance is colorable. Under the *Hartley* standard, that is enough.

### 4.   Plaintiff's Motive in Joining the Individual Employees Is Legitimate.

Defendants argue that Plaintiff's $80 million demand against employees who could not personally satisfy such a judgment proves the joinder was motivated solely by forum selection. Opp. at 29. This argument fails on both the law and the facts. On the facts, Plaintiff suffered catastrophic injuries: she lost her three-year-old son in the fire, was burned across over 53% of her body, and had her fingers amputated. She has every legitimate reason to hold the individual employees personally accountable for their affirmative decisions—painting over structural

16

damage, greasing a broken door, directing that repairs be deferred—that contributed to her inability to escape. On the law, the *AIDS Counseling* standard asks whether there was "no real intention to get a joint judgment," not whether a judgment against employees is probable. 903 F.2d at 1003. A plaintiff who alleges personal wrongdoing by specific individuals and seeks to hold them personally accountable has exactly the kind of real intention that *AIDS Counseling* contemplates.

**C.    Fraud and Concealment Claims Against the Individual Employees Are Colorable.**

Defendants argue that the Compression Issue—structural deflection of the sliding glass door frame caused by termite damage and moisture infiltration—could not have been concealed because any tenant could simply try to open the door. Opp. at 21-22. This argument misapprehends the nature of the concealment Plaintiff alleges. The defect Plaintiff was unable to discover was not that the door was difficult to open; it was that the door's reduced operability was caused by hidden internal structural damage that would ultimately render the door inoperable in an emergency. The Maintenance Employees allegedly greased the door track to temporarily restore the appearance of smooth function—deliberately masking the underlying structural compromise. Compl. ¶ 130. A tenant who tested the door in May 2022 would have found it operating smoothly, precisely because the Employees had lubricated it to conceal the true condition.

Virginia law is clear that such concealment is actionable. "[C]oncealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated." *Clay v. Butler*, 132 Va. 464, 474 (1922); *see also Spence v. Griffin*, 236 Va. 21, 28 (1988) (concealment "accomplished by word or conduct" is "the equivalent of a false representation, because concealment always involves deliberate nondisclosure designed to prevent another from learning the truth"). The allegations here satisfy that standard: a work order dated May 31, 2022—the day before Ms. Ghee took occupancy—ties the Individual Defendants to specific knowledge

17

of Unit G-8's sliding door condition, and they painted over moisture damage and termite holes in an effort to conceal the conditions from the PRHA inspector and Ms. Ghee. Moreover, the prior tenant of Unit G-8, Donisha Bugg, had observed termite damage above the sliding glass doors, saw insects she believed to be termites on multiple occasions, and informed Pinetree at least four times. Compl. ¶¶ 26, 29. Pinetree never repaired the damage—it painted over it. To the extent Defendants argue that the concealment allegations lack particularity, the Fourth Circuit has adopted a relaxed Rule 9(b) standard for fraud by omission or concealment, recognizing that "facts will often be in the sole possession of the defendant." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023).

*Kuczmanski v. Gill*, 225 Va. 367 (1983), is not on point. In *Kuczmanski*, the missing storm windows were visibly absent—plainly discoverable by looking at the window frames. *Id*. at 369. Here, the structural damage—termite-eaten wood framing inside the wall behind drywall, deflecting the door header—was entirely hidden from any reasonable inspection a tenant could conduct. Plaintiff could not "cursory inspect" the interior structural framing of her apartment wall without demolishing the drywall.

Defendants also argue that Virginia law requires a plaintiff to perceive only the "danger and hazard," not its cause. Opp. at 23 (citing *Freeman v. Case Corp.*, 118 F.3d 1011, 1014-15 (4th Cir. 1997)). But the relevant hazard was not simply "a hard-to-open door"—it was a door that would fail to open at all in a fire emergency. That hazard was latent and was actively concealed by the lubrication of the track, which restored temporary function. Plaintiff perceived a door that, by design of the Employees' intervention, appeared normal.

As for specific intent against Yohannes: at the fraudulent joinder stage, Plaintiff need not prove intent—she need only show a colorable claim. The allegations that Yohannes directed

18

suppression of costly repairs while knowing of systemic structural failures throughout the complex are sufficient to raise a genuine question of intent that warrants state-court adjudication, not dismissal on the pleadings in a federal forum.

**D.    *Skidmore* Confirms That Unsettled State-Law Questions Must Be Resolved in State Court.**

Defendants quote *Skidmore* for the proposition that this Court can "predict with certainty" how a state court would resolve the legal questions at issue. Opp. at 4-5. They misread it. The "predict with certainty" language in *Skidmore* describes a standard that *cannot* be met—it is a limitation on federal jurisdiction, not an invitation to adjudicate contested state-law issues. 2026 U.S. App. LEXIS 9129, at *8. Where the court "cannot predict with certainty how a state court . . . would resolve the legal issues' implicated by the case, it should leave those issues for a state court to decide." *Id.* (quoting *Hartley*, 187 F.3d at 425-26).

The questions presented here are not clearly settled. Whether a pest contractor's multi-year negligent application of termiticide across a residential complex constitutes misfeasance under *Kaltman*; whether painting over structural damage is an affirmative act that increases risk under *Tingler*; whether a regional manager's directive to limit costly structural repairs constitutes actionable misfeasance; whether lubrication of a compromised door conceals an otherwise latent hazard—these are fact-intensive applications of Virginia negligence law to unusual circumstances. The Fourth Circuit's instruction in *Skidmore* is unambiguous: a district court "shouldn't wrestle with thorny state-law questions, nor should it otherwise 'delv[e] too far into the merits.'" 2026 U.S. App. LEXIS 9129, at *7-8 (quoting *Hartley*, 187 F.3d at 425). That is precisely what Defendants ask this Court to do.

19

Defendants' thirty-page brief[7] is the strongest evidence that these questions are not "clearly settled." Under *Skidmore*, Plaintiff's claims need only clear the bar of possibility. 2026 U.S. App. LEXIS 9129, at *10-11. The Motion to Remand should be granted.

## IV.   CONCLUSION

Defendants have not—and cannot—demonstrate that there is *no possibility* that Plaintiff can establish a cause of action against PestNow or the Individual Employees in state court. Plaintiff's claims against PestNow rest on a colorable theory of misfeasance and an assumed duty under § 324A that is not clearly foreclosed by Virginia law. Her claims against the Individual Employees rest on affirmative acts—painting over structural damage, lubricating a compromised door, directing that costly repairs be deferred—that are at least arguably misfeasance under Virginia's misfeasance/nonfeasance distinction. For these reasons, and for those set forth in Plaintiff's Motion to Remand, Plaintiff respectfully requests that the Court grant the Motion and remand this action to the Circuit Court of the City of Petersburg.

Respectfully submitted,

NYEISHA S. GHEE,


By: /s/ Mark J. Krudys
        Counsel

---

[7]   Even more tellingly, the Beachwold Defendants' opposition (ECF No. 20) purports to adopt and incorporate PestNow's Motion to Dismiss arguments. *See* ECF No. 20 at 5 n.2. That is clearly improper for a brief that barely fits within the 30-page limitation mandated by Local Civil Rule 7(F)(3). Permitting a party that has exhausted its page allotment to incorporate by reference unlimited additional arguments from another party's brief would render the limitation a nullity. *Cf. Medtronic, Inc. v. Teleflex Life Sciences Ltd.*, 86 F.4th 902 (Fed. Cir. 2023) (rejecting incorporation by reference as circumvention of word-count limits). The Plaintiff respectfully requests that the Court ignore invitation to do so as improper.

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
THE KRUDYS LAW FIRM, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, Virginia 23219
Telephone: (804) 774-7950
mkrudys@krudys.com
dzemel@krudys.com

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
CUTHBERT LAW OFFICES, P.C.
220 North Sycamore Street
Petersburg, Virginia 23803-3228
Telephone: (804) 733-3100
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2026, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

By: /s/ Mark J. Krudys
Mark J. Krudys (VSB No. 30718)
THE KRUDYS LAW FIRM, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, Virginia 23219
Telephone: (804) 774-7950
mkrudys@krudys.com
*Counsel for Plaintiff*

22